**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-02583-DDD-SBP

HUNTER ADAM MELNICK,

Plaintiff,

v.

ARMANDO SALDATE III, Director, Colorado Bureau of Investigation,
TERRY REEVES, Sheriff of Crowley County,
JANE DOES 1-2, Deputies, Crowley County Sheriff's Office, and
JOHN DOE 1, Deputy, Crowley County Sheriff's Office,

Defendants.

---

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Susan Prose, United States Magistrate Judge**

In 2006, Plaintiff Hunter Adam Melnick was convicted in a Colorado state court of multiple offenses, including felony sexual assault, involving a victim who was a minor. In the instant matter, he brings claims under 42 U.S.C. § 1983 challenging the constitutionality of various provisions of the Colorado Sex Offender Registration Act, Colo. Rev. Stat. §§ 16-22-10 to -115 ("CSORA"), a statute with which he is required to comply pursuant to the terms of his parole. Plaintiff sues Armando Saldate III, the Director of the Colorado Bureau of Investigation, and Terry Reeves, the Sheriff of Crowley County, Colorado, along with other unnamed employees of the Crowley County Sheriff's Office (collectively, with Sheriff Reeves, the "Sheriff's Office Defendants").

Plaintiff is no stranger to litigation in this District, where he has brought no fewer than seventeen cases, in addition to this one.[1] But there is a twist here: Plaintiff has filed a case *identical* to the instant matter, against the very same Defendants, in a Colorado state court. *See Melnick v. Saldate, et al.*, No. 25CV639 (Denver District Court) (hereafter, the "State Case"). Indeed, Plaintiff filed both cases the same day: August 18, 2025. *Compare id.* (August 18, 2025 filing date of State Case) *with* ECF No. 1 (August 18, 2025 filing date of instant case). The State Case is ongoing and, like this one, is at the motion-to-dismiss stage, albeit with the briefing on the motions completed earlier in the State Case than here. The undersigned United States Magistrate Judge has been assigned to make a recommendation on the pending motions to dismiss in this case. ECF No. 37 (Saldate's motion); ECF No. 77 (Sheriff's Office Defendants' motion). Chief Judge Domenico also has referred to this court Plaintiff's motion seeking leave to amend his complaint in this matter. *See* ECF No. 91.

Having carefully considered the briefing on the motions pursuant to the applicable law, the undersigned respectfully finds that the appropriate course is to abstain from exercising

---

[1] *See, e.g.*, *Melnick v. Camper*, No. 18-cv-02885-CMA-KLM (D. Colo.); *Melnick v. Raemisch*, No. 19-cv-00154-DDD-SBP (D. Colo.); *Melnick v. Colorado State Board of Parole*, No. 19-cv-00654-LTB-GPG (D. Colo.); *Melnick v. Lawrence*, No. 19-cv-01550-CMA-KAS (D. Colo.); *Melnick v. Gamblin*, No. 20-cv-02284-DDD-SBP (D. Colo.); *Melnick v. Polis*, No. 21-cv-00717-LTB-GPG (D. Colo.); *Melnick v. Colorado State Board of Parole*, No. 21-cv-00908-CMA (D. Colo.); *Melnick v. Williams*, No. 21-cv-01695-DDD-SBP (D. Colo.); *Melnick v. Gamblin*, No. 21-cv-03316-DDD-SBP (D. Colo.); *Melnick v. Polis*, No. 22-cv-01139-LTB-GPG (D. Colo.); *Melnick v. Polis*, No. 23-cv-01791-LTB-SBP (D. Colo.); *Melnick v. Zimmerman*, No. 23-cv-02643-DDD-SBP (D. Colo.); *Melnick v. Colorado State Board of Parole*, No. 25-cv-01876-LTB-RTG (D. Colo.); *Melnick v. Nelson*, No. 25-cv-03032-RTG (D. Colo.); *Melnick v. Wallace*, No. 25-cv-03033-DDD-SBP (D. Colo.); *Melnick v. Wallace*, No. 25-cv-03746-RTG (D. Colo.); *Melnick v. Barber*, No. 26-cv-00474-DDD-SBP (D. Colo.).

federal jurisdiction to allow the court in the State Case to address, in the first instance, Plaintiff's numerous challenges to the constitutionality of a Colorado statute regulating the registration obligations of convicted sex offenders. Therefore, the court respectfully **RECOMMENDS** that both motions to dismiss be **GRANTED**. Moreover, because Plaintiff's proposed amended pleading fundamentally reiterates the claims that are now pending, and permitting an amendment would not change the court's abstention analysis, the court further **RECOMMENDS** that Plaintiff's motion for leave to amend be **DENIED**.

## BACKGROUND

On May 12, 2006, Plaintiff pleaded guilty to three charges: (1) violating Colo. Rev. Stat. § 18-3-402(1)(a), sexual assault/overcome victim's will, a class 4 felony; (2) violating Colo. Rev. Stat. § 18-3-204, third degree assault, knowingly or recklessly causing injury, a class 1 misdemeanor; and (3) violating Colo. Rev. Stat. § 18-3-206, menacing, a class 3 misdemeanor. *See* Charges/Disposition, *People v. Hunter Melnick*, Case No. 2005CR0000426 (Douglas County District Court)[2]; *see also People v. Melnick*, 440 P.3d 1228, 1229 (Colo. App. 2019) ("In 2006,

---

[2] The court properly takes judicial notice of Colorado court records in Plaintiff's criminal case. *See, e.g.*, *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (courts have "discretion to take judicial notice of publicly-filed records . . . concerning matters that bear directly upon the disposition of the case at hand"); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (recognizing that "federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"); *Trusdale v. Bell*, 85 F. App'x 691, 693 (10th Cir. 2003) (approving a magistrate judge taking judicial notice of district court records concerning plaintiff's criminal conviction); *Stack v. McCotter*, 79 F. App'x 383, 391 (10th Cir. 2003) ("Acting under our power to take judicial notice of related proceedings, *see St. Louis Baptist Temple*, 605 F.2d at 1172, we have obtained and reviewed a copy of the state district court docket sheet in the mandamus proceeding."). Plaintiff's

Melnick pleaded guilty to sexual assault and two misdemeanors—third degree assault and menacing."). The victim of Plaintiff's sexual assault was a person under the age of eighteen. *See* Charges/Disposition in Case No. 2005CR0000426 (listing other charge of contributing to the delinquency of a minor); *see also* Colo. Rev. Stat. § 18-3-404(1.5) (stating that for unlawful sexual contact, "child" means any person under the age of eighteen); Colo. Rev. Stat. § 18-6-701(1)(c) ("As used in this section [contributing to the delinquency of a minor], the term 'child' means any person under the age of eighteen years.").

For these crimes, Plaintiff "received an aggregate sentence of thirty months in jail on the misdemeanors and a consecutive ten years to life on Sex Offender Intensive Supervision Probation ("SOISP") on the sexual assault," pursuant to Colorado's Sex Offender Lifetime Supervision Act of 1998, or "SOLSA," Colo. Rev. Stat. § 18-1.3-1001 *et seq.*[3] *See People v. Melnick*, 440 P.3d at 1229. As of the date of this recommendation, Plaintiff is out of custody on parole and resides in Ordway, Colorado. *See* ECF No. 105 at 2; *see also* ECF No. 103 (notice of change of address).

In this lawsuit, Plaintiff makes twelve constitutional attacks on provisions of CSORA and their application to him pursuant to § 1983:

---

convictions for these crimes subject him to the requirements of CSORA and thus have bearing on the claims he raises in this lawsuit.

[3] "Colorado's sex offender scheme has three main features . . .: management of sex offenders by the Sex Offender Management Board ('SOMB'), sex offender registration under CSORA, and parole board supervision of offenders on supervised release or subject to the Colorado Sex Offender Lifetime Supervision Act of 1998 ('SOLSA')." *Ryals v. City of Englewood*, 364 P.3d 900, 905 (Colo. 2016).

(1) a claim alleging that the requirement to identify the offender's place of employment, including on the standardized CSORA registration form, *see* Colo. Rev. Stat. § 16-22-109(1)(a),[4] is "void for vagueness and violates the overbreadth doctrine because it sweeps up constitutionally protected conduct," and that the provision was arbitrarily enforced by the Sheriff's Office Defendants in violation of the First, Fourth, Fifth, Eighth, Ninth, Tenth, and Fourteenth Amendments to the United States Constitution, ECF No. 9 at 7-8 (Claim 1);

(2) another claim asserting that the CSORA requirement to identify the offender's place of employment, *see* Colo. Rev. Stat. § 16-22-109(1)(a), is "void for vagueness and violates the overbreadth doctrine because it sweeps up constitutionally protected conduct," and that the provision was arbitrarily enforced by Sheriff's Office Defendants, purportedly in violation of the First, Fourth, Fifth, Eighth, Ninth, Tenth, and Fourteenth Amendments, *id.* at 8-11 (Claim 2);

(3) a claim contending that the "place of residence" provision of CSORA governing trailer and motor homes, Colo. Rev. Stat. § 16-22-109(1)(a.3), is "void for vagueness" and that the Sheriff's Office Defendants arbitrarily enforced it in applying it to Plaintiff's trailer, in violation of the First, Fourth, Fifth, Eighth, Ninth, Tenth, and Fourteenth Amendments, *id.* at 11-12 (Claim 3);

(4) a claim asserting that CSORA is void for vagueness because it does not clearly articulate standards for registering "commercial property," and that arbitrary enforcement of commercial-property questions by the Sheriff's Office Defendants violated the First, Fourth, Fifth, Eighth, Ninth, Tenth, and Fourteenth Amendments, *id.* at 12-14 (Claim 4);

(5) a claim asserting that the Sheriff's Office Defendants arbitrarily enforced CSORA's residence-registration requirement, Colo. Rev. Stat. § 16-22-109(1)(a), by making Plaintiff register a "rental home" where he "did not

[4] The form requires that the offender identify his employer's name, a "contact person," a contact phone number, the employer's address, the dates of employment, and the offender's occupation. *See* https://apps.colorado.gov/apps/dps/sor/resources/forms/CBI Sex Offender Registration Form.pdf (last accessed Aug. 15, 2026).

spend any time . . . and did not live or work," in violation of the First, Fourth, Fifth, Eighth, Ninth, Tenth, and Fourteenth Amendments, *id.* at 14 (Claim 5);

(6) a claim alleging provisions in CSORA and the Colorado Criminal Code tasking CBI with preparing standardized registration forms, are void for vagueness "under state constitution and federal constitution," because they contain including-but-not-limited-to language, *id.* at 15 (Claim 6)[5] (citing Colo. Rev. Stat. § 16-22-109(1) ("The information required on the standardized forms shall include, *but need not be limited to* . . ."); Colo. Rev. Stat. § 18-3-412.5(2) ("A person who is required to register pursuant to article 22 of title 16 and who fails to comply with any of the requirements placed on registrants by said article 22, *including but not limited to* committing any of the acts specified in this subsection (1), commits the offense of failure to register as a sex offender." (emphasis added));

(7) a claim alleging that CSORA's registration provision, Colo. Rev. Stat. § 16-22-103(1)(a), violates the federal and state Constitutions because Plaintiff—who was eighteen years old at the time of his crime—was convicted as a "minor," *id.* at 16-17 (Claim 7);

(8) a claim alleging that CSORA violates equal protection because it permits some sex offenders, but not others, to "deregister" as a sex offender, *see* Colo. Rev. Stat. § 18-3-402(3) (citing § 16-22-113(1)(b)), *id.* at 17-18 (Claim 8);

(9) a claim alleging a CSORA provision, Colo. Rev. Stat. § 16-22-111(2)(a), conflicts with other provisions of CSORA, in violation of the federal and state Constitutions, because it requires CBI to determine if an offender has failed to register, *id.* at 18-19;

(10) a claim alleging that Plaintiff does not meet the criteria for "internet posting" under Colo. Rev. Stat. § 16-22-111(1) for reasons he does not articulate, and that the allegedly "illegal internet posting" of his information violates his rights to due process and to avoid cruel and unusual punishment

[5] Claims 6 through 12 are brought against Director Saldate and Sheriff Reeves as "records custodians" for CSORA.

under the federal and state Constitutions, *id.* at 19 (Claim 10);

(11) a claim alleging that the email reporting requirement for sex offenders, Colo. Rev. Stat. § 18-3-412.5(1)(k), is facially overbroad under the federal and state Constitutions because it imposes "a chicken or the egg paradox" in that creating an email itself constitutes "usage" under CSORA, *id.* at 19 (Claim 11); and

(12) a claim alleging that CSORA's requirement to register upon release to parole, Colo. Rev. Stat. § 16-22-108(1)(d)(1), violates the federal and state Constitutions because it conflicts with a provision in Article 18 that also governs parole for sex offenders, Colo. Rev. Stat. § 18-1.3-1006, *id.* at 19-20 (Claim 12).

Plaintiff brings these claims against all Defendants in both their official and individual capacities. *Id.* at 2-3. He seeks various forms of declaratory and injunctive relief, along with damages of one million dollars against each Defendant, individually. *Id.* at 6.

The claims in Plaintiff's State Case—which, like those here, are brought against Director Saldate and the Sheriff's Office Defendants—are a *verbatim iteration* of the claims in this federal case. *Compare* Amended Complaint, ECF No. 9 (docketed September 15, 2025) *with* State Case, Amended Civil Rights Complaint (docketed September 22, 2025) (setting forth claims identical to Claims 1 through 12 here). Put simply, the instant litigation is a carbon copy of the State Case.[6]

Against this background, the court turns to the pending motions, which are ripe for recommendation.

---

[6] The presiding judge in the State Case recently denied Plaintiff's Motion for Leave to Amend Complaint, finding that "Plaintiff has previously amended and must first respond to the motions to dismiss." *See* State Case, June 2, 2026 Order: Motion for Leave to Amend Complaint; *see also* ECF No. 107-1 at 8.

## ANALYSIS

### I. Defendants' Motions to Dismiss

Director Saldate and the Sheriff's Office Defendants seek dismissal of all claims against them and raise multiple legal arguments in support of their respective positions. *See generally* ECF Nos. 37, 76.[7] However, only Director Saldate argues that the court should abstain from exercising jurisdiction in this matter under the Supreme Court's precedent in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), and *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). *See* ECF No. 76 at 6-8. Because it is apparent from the record before the court that the entire scope of the instant case is parallel to the State Case, the court will address the threshold abstention question as to the case as a whole, without cordoning off the claims brought against the Sheriff's Office Defendants. *See Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999) (considering the applicability of the *Colorado River* doctrine *sua sponte* despite parties' arguments not addressing that abstention doctrine); *Hamilton v. Emerald Isle Lending Co.*, No. 10-cv-02713-REB-KMT, 2011 WL 1990568, at *11 n.2 (D. Colo. Apr. 6, 2011) ("The court may address abstention under the *Colorado River* doctrine *sua sponte.*"), *report and recommendation adopted*, 2011 WL 198729 (D. Colo. May 23, 2011).

As a threshold matter, the court finds that, in raising claims under § 1983, which allows an injured person to seek damages for the violation of his or her federal rights against a person

---

[7] Defendants' jurisdictional challenges—that Plaintiff's claims are not ripe and that he lacks standing to challenge CSORA's reporting requirements because he is incarcerated, *see* ECF No. 76 at 4-6—no longer have purchase in light of Plaintiff's release from custody.

acting under color of state law, Plaintiff has properly invoked this court's jurisdiction under 28 U.S.C. § 1331. However, the court also finds that the circumstances of this case warrant this court's abstention of jurisdiction under both the *Pullman* and *Colorado River* abstention doctrines. The court examines the case first pursuant to *Pullman* abstention principles, then turns to the abstention test articulated in *Colorado River*.

**A. *Pullman* Abstention**

"The *Pullman* doctrine is a 'narrow exception' to the federal courts' general duty to decide cases and 'is used only in exceptional circumstances.'" *Caldara v. City of Boulder*, 955 F.3d 1175, 1178 (10th Cir. 2020) (quoting *Kansas Jud. Rev. v. Stout*, 519 F.3d 1107, 1119 (10th Cir. 2008)). *Pullman* abstention is premised on the principle that federal courts should avoid "premature constitutional adjudication." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 306 (1979), and the Tenth Circuit Court of Appeals also has recognized that the doctrine mitigates the "risk of rendering advisory opinions." *Caldara*, 955 F.3d at 1178 (citing *Moore v. Sims*, 442 U.S. 415, 428 (1979) ("[T]he *Pullman* concern [is] that a federal court will be forced to interpret state law without the benefit of state-court consideration and . . . render[ ] the federal-court decision advisory and the litigation underlying it meaningless.")). Application of *Pullman* thus "avoids 'federal-court error in deciding state-law questions antecedent to federal constitutional issues,' by allowing for parties to adjudicate disputes involving 'unsettled state-law issues' in state courts." *Id.* (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 76 (1997)).

For *Pullman* abstention to apply, three requirements must be satisfied: "(1) an uncertain issue of state law underlies the federal constitutional claim; (2) the state issues are amenable to

interpretation and such an interpretation obviates the need for or substantially narrows the scope of the constitutional claim; and (3) an incorrect decision of state law by the district court would hinder important state law policies." *Id.* at 1179 (quoting *Lehman v. City of Louisville*, 967 F.2d 1474, 1478 (10th Cir. 1992)).

### 1. Predicate Elements for *Pullman* Abstention

#### a. Uncertain Issues of State Law

Commencing with the existence of "an uncertain issue of state law," the court finds that underlying each of Plaintiff's federal constitutional claims is an issue concerning the interpretation of CSORA (and its related provisions in Title 18 of the Colorado Criminal Code) that no Colorado court has yet addressed. *See Caldara*, 955 F.3d at 1177-83 (recognizing that a federal court may abstain from considering claims that require the interpretation of state statutes, even where the plaintiff brings federal constitutional challenges). The parties point to no law definitely establishing the standards by which these claims should be assessed, and this court's own research[8] has revealed none.

Recall that each of Plaintiff's federal constitutional claims hinges on an interpretation of CSORA's registration requirements, which Plaintiff asserts are constitutionally infirm and subject to arbitrary enforcement. These purported defects, Plaintiff contends, allowed the Sheriff's Office Defendants to improperly construe the registration mandate as sweeping within it information concerning a restaurant Plaintiff owned but did not operate; a trailer that "was neither a residence nor an operable motor vehicle"; "commercial property" where Plaintiff neither lived nor worked; and rental property occupied by persons other than Plaintiff. ECF No.

---

[8] The court utilized the Westlaw research platform.

106 at 15 (arguing that the imposition of these registration requirements exacted "reporting obligations beyond those enacted by the Colorado General Assembly"). And Plaintiff further argues that, in light of the circumstances surrounding his crime of conviction, it is a violation of his constitutional rights to subject him to CSORA's prohibition on "deregistration" and the statute's "internet posting" provision. *See generally* ECF No. 9 at 15-20.

This court's research has revealed no decision from a Colorado state court that has considered the particular attacks on the specific CSORA registration requirements Plaintiff makes here.[9] These open questions of state law underlying Plaintiff's federal constitutional

[9] These cases are representative of the numerous decisions the court has reviewed, which discuss the CSORA provisions Plaintiff challenges but that do not address not address his specific objections to the alleged constitutional defects in the provisions. *E.g.*, *Dorsey v. People*, 536 P.3d 314, 317 n.2 (Colo. 2023) (reviewing two questions: "1. Whether the division erred in concluding that the recidivist provision in subsection 18-3-412.5(2)(a), C.R.S. (2022) (failure to register as a sex offender — second or subsequent offense) is a sentence enhancer, not an element of the criminal offense. 2. Whether, even assuming the recidivist provision in subsection 18-3-412.5(2)(a), C.R.S. (2022) is a sentence enhancer, allowing a judge to elevate the *class* or *level* of offense based on recidivism violates a defendant's Sixth Amendment right to a jury trial."); *People In Int. of T.B.*, 489 P.3d 752, 772 (Colo. 2021) ("[W]e hold that mandatory lifetime sex offender registration for offenders with multiple juvenile adjudications constitutes punishment and is cruel and unusual. To be clear: We express no opinion on the legislature's ability to mandate lifetime sex offender registration for adult offenders."); *McCulley v. People*, 463 P.3d 254, 260 (Colo. 2020) ("The question before us is whether a defendant who successfully completes a deferred judgment nevertheless 'has [a] conviction' for purposes of the eligibility bar in section 16-22-113(3)(c)."); *People v. Chronis*, 578 P.3d 76, 80 (Colo. App. 2025) (rejecting offender's "argument that his 1991 adjudication may not be used to deny his petition for deregistration based on the cross-reference to the timeframes in section 16-22-103(2)"), *cert. denied*, No. 25SC603, 2026 WL 2099755 (Colo. July 20, 2026); *People v. Dulac*, 548 P.3d 1159, 1163 (Colo. App. 2024) (concluding that "a defendant is eligible to petition for removal from the sex offender registry under section 16-22-113(1)(d) only after successful completion of the deferred judgment and sentence (or deferred adjudication) *and* dismissal of the

questions may accurately be characterized as "uncertain" for purposes of the *Pullman* analysis and thus are properly addressed in the State Case, where Plaintiff's § 1983 claims also can be resolved. *See, e.g.*, *Gale v. City & Cnty. of Denver*, No. 16-cv-02436-MSK-KMT, 2018 WL 2463242, at *6 (D. Colo. June 1, 2018) ("[F]ederal and state courts have concurrent jurisdiction in § 1983 actions." (citing *Carter v. City of Emporia, Kan.*, 815 F.2d 617, 621 (10th Cir. 1987))), *aff'd*, 962 F.3d 1189 (10th Cir. 2020)); *Jaffe v. City & Cnty. of Denver*, 15 P.3d 806, 811 (Colo. App. 2000) (examining the merits of a claim brought pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)); *Sanchez ex rel. DiFerdinando v. Sch. Dist. 9-R*, 902 P.2d 450, 451-52 (Colo. App. 1995), *as modified on denial of reh'g* (Feb. 23, 1995) (same).

**b. Elimination or Modification of Constitutional Questions**

Having found that the first element of *Pullman* abstention is present as to all claims

---

case"); *People v. Morris*, No. 21CA0643, 2023 WL 12052194, at *1 (Colo. App. Aug. 10, 2023) (finding moot an appeal in which an offender argued that § 16-22-103(1)(a) violated "Colorado's constitutional prohibition against retrospective civil laws as applied to him"); *People v. Evano*, No. 20CA0320, 2022 WL 22926776, at *3 (Colo. App. June 23, 2022) (referencing § 16-22-111(2)(a) in noting that, "[w]hile these provisions are instructive in describing the CBI's role in the registration scheme, they are not dispositive to the determination of when an individual's registration is legally submitted"); *Stanley v. Dist. Att'y for 18th Jud. Dist.*, 395 P.3d 1198, 1202 (Colo. App. 2017) (holding that § 16-22-113(3) "mandate[s] that persons convicted outside of Colorado of offenses comparable to those proscribed in section 18-3-402 are expressly precluded from seeking relief from Colorado sex offender registration requirements and are subject to lifetime registration as long as they remain temporary or permanent residents of Colorado"); *People v. Noel*, No. 15CA1087, 2017 WL 11931530, at *1 (Colo. App. June 22, 2017) (addressing, tangentially, the subsection of § 16-22-109(1) dealing with homeless sex offenders and their obligation "to register a verifiable location and to confirm the location on a monthly basis" (citing Colo. Rev. Stat. § 16-22-109(1)(a.9), (3.5)(b)-(c))).

Plaintiff raises in this litigation,[10] the court considers the second *Pullman* factor, which "presents 'the pivotal question in determining whether abstention is appropriate': is the statute 'fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question.'" *Caldara*, 955 F.3d at 1181 (quoting *City of Houston v. Hill*, 482 U.S. 451, 468 (1987)). The answer here is yes.

"Among the cases that call most insistently for abstention are those in which the federal constitutional challenge turns on a state statute, the meaning of which is unclear under state law." *Harris Cnty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 84 (1975). "Where there is an action pending in state court that will likely resolve the state-law questions underlying the federal claim, [the Supreme Court has] regularly ordered abstention." *Id.* at 83. The decision that will be issued by the judicial officer in the State Case—who is charged with addressing the very same issues as this court, as a result of Plaintiff's decision to file duplicate litigation in the two forums—will interpret the CSORA provisions at issue, thus bringing clarity to those components of the statute. The Denver District Court Judge is certain to resolve the state law questions underlying the identical § 1983 claims Plaintiff brings in the State Case and here. His decision, which also can address the merits of Plaintiff's § 1983 claims, may eliminate entirely the need for this court to determine whether the CSORA provisions at issue offend the United States Constitution. *See*

[10] Director Saldate excludes from his *Pullman* analysis Claim 8, which challenges Plaintiff's inability to "deregister" under CSORA as a violation of his equal protection rights, *see* ECF No. 9 at 17-18, seemingly on grounds that it is not a "constitutional claim." *See* ECF No. 76 at 7. The basis for Director Saldate's argument is not entirely clear to the undersigned, who liberally construes the claim as another iteration of a constitutional attack on CSORA and accordingly finds that it falls within the parameters of *Pullman* abstention.

*Caldara*, 955 F.3d at 1181 (abstention is appropriate when the state law issues informing the federal constitutional analysis are "not only uncertain but also potentially decisive").

The second *Pullman* factor therefore is satisfied and weighs in favor of abstention.

**c. Intrusion Upon Important State Functions**

Finally, the third *Pullman* element asks the court to examine whether important state law policies would be hindered by this court making an "incorrect prediction" about the response of Colorado courts to Plaintiff's arguments concerning the alleged unconstitutionality of several aspects of CSORA. *See Caldara*, 955 F.3d at 1182; *see also Caldara v. City of Boulder*, 341 F. Supp. 3d 1241, 1245 (D. Colo. 2018) (observing that "the third [*Pullman*] element examines whether an incorrect prediction of state law by this Court would hinder important state policies"), *aff'd*, *Caldara*, 955 F.3d 1175.

Colorado courts—and the Colorado legislature—have made clear that the purpose of CSORA's registration requirements "is not to inflict additional punishment on a person convicted of a sexual offense but rather to aid law enforcement officials in investigating future sex crimes and to protect the public safety." *Curtiss v. People*, 410 P.3d 539, 541 (Colo. App. 2014) (citing *People v. Brooks*, 296 P.3d 216, 217 (Colo. App. 2012)); *see also* Colo. Rev. Stat. § 16-22-112(1)(a) ("The general assembly further finds that the public must have access to information concerning persons convicted of offenses involving unlawful sexual behavior that is collected pursuant to this article to allow them to adequately protect themselves and their children from these persons."). Were this court to find merit in any of Plaintiff's constitutional challenges to the CSORA registration requirements, that decision could negatively impact the integrity of Colorado's sex offender registry and serve as the impetus for removing certain

offenders from the list. In this way, a decision from this court could have the unintended effect of chipping away at the public safety purpose underlying CSORA's implementation. Thus might a decision from this court, attempting to predict how a Colorado state court would respond to Plaintiff's arguments, disrupt an important state interest. Colorado courts should have the first say in these crucial questions of statutory interpretation, and they are better-positioned than this court to do so. *See People In Int. of T.B.*, 489 P.3d at 772 (recognizing that "CSORA is a complex statute, imposing various registration requirements on those convicted of offenses involving unlawful sexual behavior") (Boatright, J., dissenting); *see also, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Est. of Calendine*, No. 21-cv-01541-NYW-MDB, 2022 WL 17486796, at *15 (D. Colo. Dec. 7, 2022) ("The Court is also mindful that state courts are in the best position to recognize new rules of state law." (citing *Moore v. U.S./U.S. Dep't of Agric. Forest Serv.*, 864 F. Supp. 163, 165 (D. Colo. 1994) ("[F]ederal courts exercising diversity jurisdiction have traditionally applied existing state law and have refrained from creating new state law where the state's highest court has not done so."))).

This court therefore properly stands aside while a Colorado state court resolves the questions, presented by Plaintiff simultaneously in the State Case and here, concerning the correct interpretation of multiple components of the registration provisions of CSORA—questions that are indisputably of important state interest.

### 2. Abstention Is Appropriate Under *Pullman*

Having found that all three *Pullman* factors are satisfied and weigh in favor of abstention in this case, the court next takes up the question whether the discretionary exercise of its equitable powers *should* be employed. *See Baggett v. Bullitt*, 377 U.S. 360, 375 (1964).

"Ascertainment of whether there exist the special circumstances prerequisite to [the application of the abstention doctrine] must be made on a case-by-case basis." *Id.* (citation modified). The record here, the court finds, presents just such "special circumstances." Indeed, it is difficult to conceive of a more appropriate case for a court to exercise its discretionary authority to abstain from: where there is a pending state court action that is wholly duplicative of the federal matter, and that action will be decided by a state judicial officer in a better position to conduct the interpretation of CSORA that Plaintiff's claims demand, in a manner at least as fast (if not faster) than could be achieved in this court.[11]

Plaintiff's opposition to *Pullman* abstention is unpersuasive. He asserts that he "does not merely seek an interpretation of CSORA," but that his allegations unequivocally state violations of his constitutional rights and therefore do not concern an "unsettled issue of Colorado law." ECF No. 105 at 4-5. To the contrary, an "interpretation of CSORA" is precisely what must be made before the uncertain constitutional questions Plaintiff raises can be decided. And the point of the *Pullman* abstention doctrine is that the resolution of such questions should fall, in the first instance, to the judge presiding over the State Case that Plaintiff elected to bring. Neither is it the case that, whatever the state court decides, "the federal constitutional issues would remain" for this court to decide, as Plaintiff argues. *Id.* at 5. As this court has explained, Plaintiff's § 1983 claims—and Defendants' assertion of the defense of qualified immunity in response to those

[11] Plaintiff need have no concern about a delay attendant on this court abstaining. Defendants' motions to dismiss in the State Case have been fully briefed since July 2, 2026, ECF No. 107-4 at 6-7 (reflecting that both reply briefs were filed that day).

claims, which Plaintiff is obliged to overcome[12]—are issues over which the state court has concurrent jurisdiction and that it will necessarily address in resolving the pending motions to dismiss. All issues raised in the instant matter may be conclusively resolved in the State Case, and if resolved against Plaintiff, will require no further adjudication in this court. Taken together, these circumstances strongly counsel against federal court involvement and in favor of abstention.

Accordingly, the court respectfully **RECOMMENDS** that *Pullman* abstention be exercised, deferring any consideration of the case by this court until the state court first addresses the statutory interpretation questions underlying the federal constitutional claims here. While this court anticipates that all of Plaintiff's claims will be fully resolved in the State Case, thus eliminating any future role for this court in the matter, the exact disposition of the State Case obviously cannot be known with certainty at this time. Taking that into account, the undersigned further **RECOMMENDS** that this case be administratively closed, subject to reopening for good cause following the conclusion of the State Case, pursuant to D.C.COLO.LCivR 41.2.

### B. *Colorado River* Abstention

Even if abstention were not appropriately exercised under *Pullman*, it would be so under the abstention rubrics set forth in *Colorado River*. Because this is a recommendation, and to

[12] "[W]hen a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Est. of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (quoting *Cillo v. City of Greenwood Village*, 739 F.3d 451, 460 (10th Cir. 2013)).

ensure a thorough analysis of the issue for Chief Judge Domenico's consideration, the court proceeds to evaluate the abstention question pursuant to *Colorado River*.

Under that abstention doctrine, a federal court may decline to exercise jurisdiction and dismiss or stay a case in deference to a pending parallel state-court proceeding, "based on 'considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Fox v. Maulding*, 16 F.3d 1079, 1080 (10th Cir. 1994) (quoting *Colorado River*, 424 U.S. at 817) (citation modified). This court is mindful, however, that "declining to exercise jurisdiction based on the *Colorado River* doctrine is appropriate only in 'exceptional' circumstances," as federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Id.* at 1081 (quoting *Colorado River*, 424 U.S. at 817-18). Granting a dismissal or stay pursuant to the *Colorado River* doctrine is "a serious abuse of discretion" unless "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issue between the parties." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). When such a dismissal or stay is sought, a district court's task is "to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of [federal] jurisdiction." *Id.* at 25-26.

Application of the *Colorado River* doctrine requires a two-part analysis. "[A] federal court must first determine whether the state and federal proceedings are parallel." *Fox*, 16 F.3d at 1081. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* (quotation omitted). The federal court must "examine the state proceedings *as they actually exist* to determine whether they are parallel to the federal proceedings, resolving

any doubt in favor of exercising federal jurisdiction." *Allen v. Bd. of Educ., Unified Sch. Dist., 436*, 68 F.3d 401, 403 (10th Cir. 1995) (citation modified). "[T]he decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Fox*, 16 F.3d at 1081-82 (quoting *Moses H. Cone*, 460 U.S. at 28).

Here, the federal case and the State Case are unquestionably "parallel." In fact, they are the *same case*, brought in different courthouses, involving identical complaints against identical parties.

With the first prong of the *Colorado River* test satisfied, the court next considers a "nonexclusive list of factors" to determine whether "exceptional circumstances" exist to warrant deference to the parallel state proceeding. *Id.* at 1082. Factors pertinent to that analysis include (1) the possibility that one of the two courts has exercised jurisdiction over property; (2) the inconvenience from litigating in the federal forum; (3) the avoidance of piecemeal litigation; (4) the sequence in which the courts obtained jurisdiction; (5) the "vexatious or reactive nature" of either case; (6) the applicability of federal law; (7) the potential for the state-court action to provide an effective remedy for the federal plaintiff; and (8) the possibility of forum shopping. *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1122 (10th Cir. 2018) (citing *Fox*, 16 F.3d at 1082). Several of these factors have obvious relevance here.

First and foremost, the existence of the two suits does not merely threaten "piecemeal" litigation; it assures it. Indeed, such "piecemealing" already has occurred and has prejudiced Defendants, who have been obliged to file two motions to dismiss directed at the exact same claims in two different forums. While there is some economy of scale associated with repetitive

filings, that is beside the point. Plaintiff has imposed on Defendants—all of whom are public officials who work for, and are compensated by, the people of Colorado—an uncalled-for expenditure of attorney and client resources that would not have occurred but for Plaintiff's decision to cast identical claims in two separate courts. Another obvious negative effect of this piecemeal approach to litigation is that it could generate inconsistent decisions, which is sure to create confusion and raise questions about the legitimacy of the competing orders. *See, e.g.*, *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) ("The primary purpose of the *Colorado River* doctrine is to conserve both state and federal judicial resources and prevent inconsistent results.").

A reasonable inference to be drawn from this scenario, in which Plaintiff is pursuing the same claims in two courts, is that he seeks to test whether his claims would fare better in one forum versus the other—a strategy that could logically be characterized as "forum shopping." *See Wakaya Perfection*, 910 F.3d at 1122. And while the court cannot say with certainty what drove Plaintiff to embark on a course of concurrent, duplicative litigation, that decision has the effect of burdening two courts and the defendants who are compelled to defend the same action twice. This contrivance is reasonably characterized as a vexatious approach that the doctrine of abstention is designed to forestall. *See id.*

Further, for the reasons discussed at length above, the state court is also the more convenient forum. *See id.* Despite the myriad permutations of legal challenges to CSORA's requirements that have been presented in Colorado courts, no existing case replicates the objections to the statute Plaintiff raises here. *See supra* n.10. Creating yet more new rules for interpreting that complex statute is ideally undertaken in the first place by a Colorado court, *see*

*Nat'l Union Fire*, 2022 WL 17486796, at *15, and this court properly steps aside while the state court evaluates Plaintiff's claims. Finally, the state forum can effectuate full relief for Plaintiff, including on his § 1983 claims. *See Wakaya Perfection*, 910 F.3d at 1122.

This, then, is the rare record that evinces the existence of "exceptional circumstances" and "the clearest of justifications" to defer to an ongoing adjudication in state court. *See Fox*, 16 F.3d at 108; *Moses H. Cone*, 460 U.S. at 26. On this record, the court can discern no basis to conclude that the State Case will not be "an adequate vehicle for the complete and prompt resolution of the issues between the parties," *see Moses H. Cone*, 460 U.S. at 28, particularly given that the State Case is further advanced than this matter. *See* ECF No. 107-4 at 6-7.

Plaintiff's arguments to the contrary are unavailing. He asserts that "[e]very relevant factor favors exercising jurisdiction," ECF No. 105 at 5, but that conclusory statements is devoid of objective support and does not square with the record. Plaintiff does not even attempt to grapple with the metaphorical elephant in the room: these two cases are not merely "*related*," *see id.*, but are in fact *identical* suits against the same parties. Under these circumstances, "as they actually exist," *see Allen*, 68 F.3d at 403, the court respectfully declines to countenance Plaintiff's contention that "every relevant factor" favors exercising federal jurisdiction.

Although the *Colorado River* doctrine is a difficult standard to meet, the court concludes that it is met here, where a sophisticated pro se litigant who has brought nearly twenty actions in this court has affirmatively decided to simultaneously pitch the exact same case in a state forum. Accordingly, this court should abstain from exercising jurisdiction until the litigation in the State Case is completed, and Plaintiff should be allowed to re-raise in this court only those claims, if any, that are not resolved in the State Case. *Fox*, 16 F.3d at 1083 (when abstention under

*Colorado River* is appropriate, "the better practice is to stay the federal action pending the outcome of the state proceedings").

For these reasons, the undersigned respectfully **RECOMMENDS** the court find that *Colorado River* provides an alternative basis for this court to abstain from exercising jurisdiction over the instant matter, pending the resolution of the State Case.

## II. Plaintiff's Motion for Leave to Amend

Plaintiff seeks leave to file an amended complaint, which he asserts "is easier to read, numbered and although there are some facts added, *the bulk of the facts and claims remain the same* and the parties still retain the same notice they did when the complaint was originally filed." ECF No. 91 at 1 (emphasis added).[13] Plaintiff's characterization of his proposed amended pleading, ECF No. 91-1, comports with this court's reading of it.

Upon a side-by-side comparison of the proposed amended pleading with the operative complaint here (and the identical complaint in the State Case), the court finds that the claims Plaintiff proposes to bring in the proposed amended complaint are the same, in all essential respects, as in the pending complaint. Given the fundamental similarity between the proposed amended pleading and the one in effect now, even if amendment were permitted, the proposed amendment would not provide a basis for this court to find that abstention is inappropriate. Put otherwise, the proposed amendment would not negate the existence of the "exceptional

[13] Plaintiff avers that the "Saldate Defendants do not object to amended complaint," ECF No. 102 at 1, but the court finds no support in the record for that statement. Director Saldate chose not to respond to the motion for leave to amend, but that does not necessarily indicate his agreement with it—particularly in view of his vigorous recent argument that no claim against him should proceed, including on abstention grounds. *See* ECF No. 107.

circumstances" that warrant abstention here. Plaintiff's observation that "all mention of any state claims have been removed from this [proposed amended] complaint," ECF No. 91 at 1, does not alter this conclusion. The focus of the abstention analysis is not on whether or not he raises corresponding claims under the Colorado Constitution, but rather on the fact that his *federal claims* rely on interpretation of *state* statutes.

At bottom, under the proposed amended complaint, there would still be two functionally identical cases wending their way through the state and federal courts, both of which turn on an interpretation of the same provisions of CSORA. Under these circumstances, the proposed amendment—which, as Plaintiff acknowledges, retains "the bulk of the facts and claims" from the current complaint—is futile. *Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018) ("A district court may deny leave to amend upon 'a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.'" (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993))).

The court therefore respectfully **RECOMMENDS** that Plaintiff's motion for leave to amend be **DENIED**.

## CONCLUSION

Consistent with the foregoing analysis, it is respectfully **RECOMMENDED**[14] as follows:

(1) That the Motions to Dismiss filed by the Sheriff's Office Defendants (ECF No. 37) and Defendant Saldate (ECF No. 76) be **GRANTED** on grounds of abstention under the *Pullman* and *Colorado River* abstention doctrines;

(2) That, in light of the recommended abstention, Plaintiff's Motion for Leave to Amend (ECF No. 91) be **DENIED**; and

(3) That this action be **ADMINISTRATIVELY CLOSED** pursuant to D.C.COLO.LCivR 41.2, as an appropriate way to effectuate the recommended abstention, subject to any party moving to reopen it upon a showing that the State Case has not fully resolved all of the issues raised in this matter.

DATED: August 18, 2026

BY THE COURT:

Susan Prose
United States Magistrate Judge

---

[14] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").